**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **TERRY INGRAM,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-26-CV-210-LS** |
| | § | |
| **CHARISMA EDGE, Warden,** | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Terry Ingram, Bureau of Prisons (BOP) Register Number 46827-509, challenges

the calculation of his federal sentence through a *pro se* petition for a writ of habeas corpus under

28 U.S.C. § 2241.[1] He claims that the BOP is improperly denying him First Step Act earned time

credits (FTCs) toward his early release from prison. His petition is denied.

**BACKGROUND**

Ingram is a 58-year-old inmate currently confined to the La Tuna Federal Correctional

Institution in Anthony, Texas, which is within the jurisdiction of this Court.[2] His anticipated

release date is February 28, 2028.

On May 4, 2027, sheriff's deputies in Bernalillo County, New Mexico, obtained a state

search warrant for a blue Nissan Rogue bearing an Arizona temporary tag which they believed was

used to transport narcotics.[3] The deputies joined by FBI task force officers established surveillance

at the Extended Stay America in Albuquerque and observed Ingram arrive in the Nissan Rogue.

They detained Ingram as he walked to the lobby of the hotel. After they advised Ingram of his

*Miranda* rights, he admitted that he frequently transported narcotics from Arizona to New Mexico.

---

[1] Pet'r's Pet., ECF No. 1.
[2] *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc/ (search for Reg. No. 46827-509, last visited April 10, 2026).
[3] *See United States v. Ingram*, 1:21-cr-00843-JB-1 (D. N.M.), Plea Agreement, ECF No. 53 at ¶ 9.

The officers executed the search warrant on Ingram's vehicle and found what they believed were fentanyl pills, methamphetamine, and heroin. The Drug Enforcement Administration South Central Laboratory tested the substances and confirmed the drug cache included 1836 grams of fentanyl, 1797 grams of actual methamphetamine, and 176 grams heroin.

Ingram agreed to plead guilty, pursuant to a plea agreement, to:

> … Count 3 of the indictment, charging a violation of 21 U.S.C. § 841(a)(1) and (b)(l)(B), that being: possession with intent to distribute 100 grams and more of a mixture and substance containing a detectable amount of heroin; and to a two-count information charging violations of 21 U.S.C. § 841(a)(l) and (b)(l)(B), that being: possession with intent to distribute 40 grams and more of a mixture and substance containing a detectable amount of fentanyl (Count 1) and possession with intent to distribute 5 grams and more of methamphetamine (Count 2).[4]

Although Ingram's guideline sentencing range as a career offender was 235 to 293 months' imprisonment, his plea agreement, entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), included a recommended sentencing range of 60 to 96 months' imprisonment.[5] As a result, Ingram was sentenced to concurrent terms of 96 months' imprisonment followed by four years' supervised release for each of the following offenses:

> Possession with Intent to Distribute 40 Grams and More of Fentanyl (N-Phenyl-N-[1-(2-Phenylethyl)-4-piperidinyl] propanamide) [sic] … Possession with Intent to Distribute 5 Grams and More of Methamphetamine … Possession with Intent to Distribute 100 Grams and more of Heroin.[6]

In his § 2241 petition, Ingram challenges the BOP's refusal—based on its conclusion that his fentanyl conviction made him ineligible—to award him FTCs which could be applied toward

---

[4] *Id.* at ¶ 3.
[5] *Id.* at ¶ 11.
[6] *Id.*, J. Crim. Case, ECF No. 66.

his early release to supervision.[7] He maintains he "was ultimately convicted and sentenced only on Count 3, possession with intent to distribute heroin."[8] He argues "because [he] does not fall within any statutory exclusion under 18 U.S.C. § 3632(d)(4)(D), the denial of FTCs is unlawful. He asks the Court to order the Respondent Charisma Edge "to immediately calculate and apply Petitioner's First Step Act earned time credits consistent with his actual offense of conviction."[9]

## STANDARD OF REVIEW

A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241.[10] To prevail, a prisoner must show he is "in custody in violation of the Constitution or laws or treaties of the United States."[11]

When a court receives a § 2241 petition, it accepts a petitioner's allegations as true during the initial screening.[12] It also evaluates a petition presented by a *pro se* petitioner under a more lenient standard than it applies to a petition submitted by counsel.[13] But it must still find "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[14] Upon completing the initial screening, it must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."[15]

---

[7] Pet'r's Pet., ECF No. 1 at 2.

[8] *Id*. at 1.

[9] *Id*. at 3.

[10] *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted).

[11] 28 U.S.C. § 2241(c).

[12] 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[13] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[14] *Twombly*, 550 U.S. at 556.

[15] Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

**ANALYSIS**

Ingram challenges the BOP's refusal to award him FTCs which could be applied toward his early release to supervision.[16] He asks the Court to order the Edge "to immediately calculate and apply" his accrued ETCs.[17]

The First Step Act (FSA) creates incentives to encourage prisoners to participate in evidence-based recidivism reduction (EBRR) programs and productive activities (PAs).[18] It gives *qualifying* prisoners the opportunity to earn ten additional days of FTCs for every 30 days of successful participation in EBRR programs and PAs.[19] It allows *qualifying* offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they did not increase their risk levels over two consecutive assessments.[20] It permits *qualifying* inmates to apply FTCs toward prerelease community-based placement in a residential reentry center or home confinement.[21] And, at the discretion of the BOP Director, it permits *qualifying* prisoners to apply the FTCs toward their early release to supervision.[22]

The FSA lists two types of *disqualifying* fentanyl convictions which render a prisoner ineligible to acquire FTCs.[23] First, where the prisoner "was an organizer, leader, manager, or supervisor of others in the [fentanyl] offense, as determined under the guidelines."[24] Second, where the prisoner is serving a sentence for a fentanyl conviction under 21 U.S.C. §

---

[16] Pet'r's Pet., ECF No. 1 at 2.
[17] *Id*. at 3.
[18] 18 U.S.C. § 3632(d).
[19] *Id.* § 3632(d)(4)(A)(i).
[20] *Id*. § 3632(d)(4)(A)(ii).
[21] 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c).
[22] 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).
[23] 18 U.S.C. § 3632(d)(4)(D).
[24] *Id.* § 3632(d)(4)(D)(lxviii).

841(b)(1)(A)(vi) (involving 400 grams or more of a mixture containing a detectable amount of fentanyl) or 21 U.S.C. § 841(b)(1)(B)(vi) (involving 40 grams or more of a mixture containing a detectable amount of fentanyl).[25]

The Supreme Court has held that the word "conviction" refers only to what "'the defendant [was] convicted of'" and not "what the defendant [has] actually done."[26] Because Congress predicated disqualifying prisoners from accruing FTCs based "on convictions, not conduct," the Court looks to the offense of conviction, not to the particulars of the prisoner's behavior.[27]

The Court observes that 18 U.S.C. § 3632(d)(4)(D) was intended to apply specifically to *disqualify* individuals from earning FTCs who were convicted of violating 21 U.S.C. § 841(b)(1)(B)(vi). The Court notes that Ingram was convicted for possession with intent to distribute more than 40 grams of a mixture containing a detectable amount of fentanyl in violation of 21 U.S.C. Sec 841(a)(1) and (b)(1)(B).[28] Consequently, the Court finds that Ingram was correctly identified as disqualified from receiving FTCs because of his conviction.

## CONCLUSION AND ORDER

The Court concludes that it plainly appears from Ingram's petition and the attached exhibits that he cannot meet his burden of showing that he is in custody in violation of the Constitution or laws or treaties of the United States, and he is therefore not entitled to the § 2241 relief he seeks. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Terry Ingram's *pro se* "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DENIED** and his cause is **DISMISSED WITH**

---

[25] *Id.* § 3632(d)(4)(D)(lxvi).
[26] *Mathis v. United States*, 579 U.S. 500, 511 (2016) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).
[27] *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015).
[28] *See United States v. Ingram*, 1:21-cr-00843-JB-1 (D. N.M.), J. Crim. Case, ECF No. 66.

**PREJUDICE**.

       **IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED**.

       **IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

       **SIGNED** this 10th day of April 2026.

                                        **LEON SCHYDLOWER**
                                        **UNITED STATES DISTRICT JUDGE**